Teresa Reyes Flores
Louisiana Bar No. 41107
Immigration Services and Legal Advocacy
3801 Canal St., STE 400
New Orleans, LA 70119
Phone: (504) 265-0416
Email: treyesflores@islaimmigration.org

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

| | |
|---|---|
| RODRIGUEZ PAZ, Keneth A# 240 727 790 | Case No.: |
| Plaintiff | |
| v. | |
| BRYAN PATTERSON in his official capacity as Warden of Pine Prairie ICE Processing Center, MELISSA HARPER, in her official capacity as the acting New Orleans Field Office Director of Immigration and Customs Enforcement, Enforcement and Removal Operations; TODD LYONS, in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, and TODD BLANCHE, in his official capacity as United States Attorney General. | |
| Defendants. | |

**PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

Plaintiff respectfully petitions this Honorable Court for Writ of Habeas Corpus to remedy Plaintiff's unlawful detention by Defendants.  Plaintiff petitions this Court for immediate release from custody as follows:

**INTRODUCTION**

1.     Plaintiff, Keneth Yareh Rodriguez Paz (hereinafter "Plaintiff") is a 21 year-old noncitizen born in Honduras, who is in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement

("ICE"), and is currently detained at Pine Prairie Detention Center in Pine Paririe, Louisiana. *See Exhibit A.* Plaintiff was detained by DHS/ICE on or about June 3, 2026, in Newark, New Jersey and served with a Notice to Appear, initiating Removal Proceedings against him. *See Exhibit B.* He now faces unlawful detention because the Department of Homeland Security ("DHS") and the Executive Office of Immigration Review ("EOIR") will conclude that Plaintiff is subject to mandatory detention.

2.      Plaintiff entered the United States for the first and only time on or about April 12, 2022 as an unaccompanied minor. Fearing for his safety in Honduras, and having been neglected and abandonned by his parents, Plaintiff came to the United States seeking asylum. After a long journey on foot, he arrived at the U.S. - Mexican border near El Paso, Texas. At that time, Plaintiff was processed by ICE ERO officers and Released on his own Recognizance, as an unaccompanied alien child released to a sponsor, with assistance and approval from the U.S. Department of Health and Human Services, Office of Refugee Resettlement. *See Exhibit C.*

3.      Keneth was released to his brother who was already present in the United States. A New Jersey state cutody order was granted for Keneth making him eligible for apply to the U.S. Citizenship and Immigration Service ("USCIS") for Special Immigrant Juvenile Status ("SIJS"). *See Exhibit D.*

4.      Keneth filed a timely I-360 Application for Special Immigrant Juvenile Status which was approved by USCIS on April 23, 2026 with deferred action status. *See Exhibit E.*

5.      Upon information and belief, the agents for DHS and/or ICE arrested Plaintiff without a warrant, suddenly detaining him placing him in Removal proceedings where he is charged with having entered the United States without admission or inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i)(I) .

6. At the time of his arrest and detention, Keneth was legally authorized to remain in the U.S. pursuant to his legal entry and subsequent approval of his immigrant visa petition as a Special Immigrant Juvenile. Thus DHS/ICE had no basis or right to detain Keneth at all.

7. Based on the allegations in Plaintiff's removal proceedings, DHS has already denied Plaintiff's release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement (ICE) employees to consider everyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the U.S. without admission or inspection—to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

8. Similarly, on September 5, 2025, the Board of Immigration Appeals ("BIA or Board") issued a precedent decision, binding on all immigration judges ("IJs"), holding that an IJ has no authority to consider bond requests for any person who entered the U.S. without admission. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

9. Plaintiff's detention on this basis violates the plain language of the Immigration and Nationality Act ("INA"). Section 1225(b)(2)(A) does not apply to individuals like Plaintiff who previously entered and are now residing in the U.S. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Plaintiff, are charged as inadmissible for having entered the U.S. without inspection.

10. Plaintiff is detained pending his removal proceedings without access to a hearing conducted by a neutral decisionmaker—a federal judge or an immigration

judge—to determine whether his detention is warranted based on a danger or flight risk, pursuant to the BIA's recent decision in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025) and *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025).

11. These decisions, which hold that 8 U.S.C. § 1225(b)(2) makes noncitizens like Plaintiff who are apprehended in the United States but have never been admitted subject to mandatory detention without a bond hearing, violate the statute. Instead, 8 U.S.C. § 1226(a) applies and authorizes release on bond after a hearing before an immigration judge. The BIA's interpretation conflicts with the plain language and structure of the statute, and Defendants' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Plaintiff. Therefore, the application of § 1225(b)(2) to Plaintiff is contrary to law and violates the Immigration and Nationality Act (INA) and the Administrative Procedure Act (APA).

12. In the alternative, if the statute does authorize Plaintiff's detention without a bond hearing, it violates his rights to substantive and procedural due process. Detention of all noncitizens who are subject to inadmissibility grounds, like Plaintiff, without any individualized hearing does not "bear a reasonable relation to the purpose for which the individual was committed." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The application of *Mathews v. Eldridge* balancing test shows that a bond hearing is necessary to protect Plaintiff from an unnecessary deprivation of liberty. *See* 424 U.S. 319, 335 (1976).

13. Plaintiff therefore respectfully requests that this Court issue a Writ of Habeas Corpus and order Plaintiff's immediate release from custody, with appropriate conditions of supervision if necessary. In the alternative, Plaintiff requests that this Court conduct or order an immigration judge to conduct a bond hearing immediately at which (1) the government bears the burden of proving flight risk and/or dangerousness by clear and convincing evidence and (2) the reviewing court

4

considers alternatives to detention that could mitigate risk of flight. *See German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 213-214 (3d Cir. 2020).

## PARTIES

14. Plaintiff, Keneth Yareh Rodriguez Paz, is a 21 year-old unaccompanied minor, approved Special Juvenile Immigrant, and an asylum seeker. He is a citizen of Honduras, who has been in immigration detention since June 3, 2026 pending removal proceedings. Plaintiff was detained and subsequently turned over into ICE custody, who did not set bond, and Plaintiff is unable to obtain review of his custody by an IJ, pursuant to the Board's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Plaintiff seeks issuance of a Writ of Habeas Corpus ordering his immediate release.

15. Defendant Tony Normand is employed as Warden by the GEO Group, Inc., a private company that contracts with ICE to run the Folkston D. Ray James ICE Processing Center where Plaintiff is detained. He has immediate physical custody of Plaintiff. He is sued in his official capacity.

16. Defendant Ladeon Francis is named in his official capacity as the acting Field Office Director for Atlanta ICE ERO. In this capacity, Defendant Francis is Plaintiff's immediate custodian and is responsible for Plaintiff's detention and removal, exercising direct control over Plaintiff's custody at Pine Prairie Processing Center.

17. Defendant Todd Lyons is named in his official capacity as the Acting Director of ICE. In this capacity, Defendant Lyons is responsible for the administration of federal immigration law and the execution of detention and removal determinations, and, as such, he is a legal custodian of Plaintiff. Defendant Lyons's office is located at 500 12th Street, S.W., Washington, D.C., 20536.

18. Defendant Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security. DHS oversees ICE, which is responsible for administering and

5

enforcing the immigration laws. Secretary Mullin is the ultimate legal custodian of Plaintiff. He is sued in his official capacity. Respondent Mullin's office is located at U.S. Department of Homeland Security, Washington, D.C., 20528.

19.　Defendant Todd Blanche is named in his official capacity as the Attorney General of the United States. In this capacity, he is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review, pursuant to INA § 103(g), 8 U.S.C. § 1103(g), routinely transacts business in the Western District of Louisiana, is legally responsible for administering Plaintiff's removal proceedings and the standards used in those proceedings, and as such is the legal custodian of Plaintiff. Defendant Blanche's address is U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, District of Columbia 20530.

## JURISDICTION AND VENUE

20.　This action arises under the Fifth and Fourteenth Amendments to the U.S. Constitution.

21.　This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241, Art. I §9, cl. 2 of the United States Constitution, 28 U.S.C. § 1331, and 28 U.S.C. § 1361. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

22.　The United States has waived sovereign immunity for this action for declaratory and injunctive relief against one of its agencies and that agency's officers are sued in their official capacities. *See* 5 U.S.C. § 702.

23.　Venue is proper in this District because the Plaintiff is detained in Pine Prairie Detention Center in Pine Paririe, Louisiana located in this district. 28 U.S.C. § 1391; *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004).

24.　Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S.

6

484, 493- 500 (1973), venue lies in the United States District Court for the Western District of Louisiana, the judicial district in which Plaintiff currently is detained.

25.    Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Defendants are employees, officers, and agencies of the U.S., and because a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Louisiana.

## REQUIREMENTS OF 28 U.S.C. § 2243

26.    The Court must grant the petition for Writ of Habeas Corpus or order Defendants to show cause "forthwith," unless the Plajntiff is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Defendants must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

27.    Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

28.    There is no statutory requirement of exhaustion of administrative remedies where a noncitizen challenges the lawfulness of his detention. *Arango Marquez v. I.N.S.*, 346 F.3d 892, 897 (9th Cir. 2003). In cases, like Plaintiff's, which "hinge almost totally on statutory construction, the Court finds that exhaustion of administrative remedies is likely excused on that ground." *Del Cid Del Cid v. Bondi*, 2025 WL 2985150 (W.D. Pa. Oct. 23, 2025), at 23 (noting also that in the case of a similarly situated petitioner, requiring exhaustion by means of BIA appeal prior to

7

litigating a claim before this Court, would be futile). Any requirement of administrative exhaustion is therefore purely discretionary. *See Santos v. Lowe*, No. 1:18-cv-1553, 2020 WL 4530728, at *2 (M.D. Pa. Aug. 2020) ("The exhaustion requirement imposed by courts relating to habeas corpus petitions filed by immigration detainees is a prudential benchmark which is not compelled by statute.").

29.    In making that decision, the Court should consider the urgency of the need for immediate review. "Where a person is detained by executive order . . . the need for collateral review is most pressing. . . . In this context the need for habeas corpus is more urgent." *Boumediene v. Bush*, 553 U.S. 723, 783 (2008) (waiving administrative exhaustion for executive detainees).

30.    Moreover, the exhaustion "doctrine is not without exception." *Ashley v. Ridge*, 288 F. Supp. 2d 662, 666. (D.N.J. 2003). "Courts have found that the exhaustion of administrative remedies may not be required when available remedies provide no opportunity for adequate relief, an administrative appeal would be futile, or if plaintiff has raised a substantial constitutional question." *Id*. at 666-67.

31.    The Board of Immigration Appeals has issued a published decision holding that people like Plaintiff who entered the United States without inspection and therefore have not been admitted are ineligible for bond pursuant to 8 U.S.C. § 1225(b)(2)(A). Immigration judges and the BIA are bound by this decision. 8 C.F.R. § 1003.1(g)(1). Exhaustion before the BIA would therefore be futile.

32.    Further, neither the Immigration Judge nor the BIA have jurisdiction to adjudicate constitutional issues. *Qatanani v. Att'y Gen. of the U.S.*, 144 F.4th 485, 500 (3d Cir. 2025); *see also Ashley*, 288 F. Supp. 2d at 667 (citation omitted). Therefore, any administrative proceedings would be futile because Plaintiff raises a constitutional due process claim. *Qatanani*, 144 F.4th at 500.

## STATEMENT OF FACTS

33.    Plaintiff is a 21 year-old citizen and national of Honduras, who has

8

resided in the US since his entry as an unaccompanied minor on or about April 12, 2022 through the U.S.-Mexico border, released by ICE through the program for unaccompanied minors in conjunction with the U.S. Department of Health and Human Services, Office of Refugee Resettlement.

34.    As per the program for unaccompanied minors, Keneth was released to his brother who was already present in the United States.  A New Jersey state cutody order was granted for Keneth making him eligible for apply to the U.S. Citizenship and Immigration Service ("USCIS") for Special Immigrant Juvenile Status ("SIJS").

35.    Keneth filed a timely I-360 Application for Special Immigrant Juvenile Status which was approved by USCIS on April 23, 2026 with deferred action status.

36.    Special Immigrant Juvenile Status is a humanitarian status that provides protections and a pathway to lawful permanent residence to immigant children up to the age of 21 years old who have been abused, abandoned or neglected by their parent(s), and where a state juvenile court has determined that it IS NOT in their best interest to be returned to their country of origin.  See Immigration and Nationality Act (INA) section 101(a)(27)(J).

37.    Keneth currently has an approved immigrant visa, which allows in to adjust his status to that of a legal permanent resident as soon as a visa number becomes available.  He must remain in the United States to apply for his permanent residence status based on his approved immigrant visa.

38.    Keneth has never been arrested anywhere in the world and has no criminal record.

39.    Keneth attends school at community college to learn english to help himself assimilate to life in the US and to have the opportunity at education that he never had and never would have in Honduras.

40.    Keneth also works to support help himself in the United States without any public benefits, while living with his sponsor family, who takes care of him and

9

raises him since he was a minor.

41. Once Plaintiff was detained on June 3, 2026, DHS initiated removal proceedings, charging Plaintiff with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the U.S. without inspection.

42. These charges have been denied in written pleadings and have not been sustained.

43. To date even after almost 2 months of detention,the case has not moved forward in the immigration court because the Defendants and their representatives have FAILED to file an I-213 which they have already had 2 months to file.

44. Plaintiff's next immigration court date, a Master hearing, was pushed out again for the 3rd time due to Defendants' failure to file the required document for the IJ to proceed, while Keneth laguishes in detention, causing additional irraparble harm to him by prolonging his detention and resolution of his case in immigration court.

45. Absent judicial review of his custody claim, Plaintiff will suffer irrparable injury by being deprived of his physical liberty.  He seeks the only avenue of judicial review available to him, habaes review.

46. As a result, Plaintiff remains in detention. Without relief from this court, he faces the prospect of months, or even years, in immigration custody, separated from his family and community.

## **LEGAL FRAMEWORK**

**I.     Section 1226(a) Governs the Detention of People Like Plaintiff Who are Detained in the United States and Have Not Previously Been Admitted**

47.     The Immigration and Nationality Act contains several provisions authorizing the detention of noncitizens. Section 1226(a) entitles most noncitizens with pending removal proceedings to a hearing before an Immigration Judge to determine whether they should be released on bond. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d). Section 1226(c) creates an exception to section 1226(a) and provides that

10

noncitizens who are removable by virtue of certain criminal convictions must be detained without a bond hearing. Section 1225(b) provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals "seeking admission" under (b)(2). Finally, section 1231 governs the detention of noncitizens with a final order of removal.

48.     The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-208, Div. C. §§ 302-03, 110 Stat. 3009-546, 3009-582 to 3009-583, 3009-585. Section 1226 was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025). "Upon passing IIRIRA, Congress declared that the new Section 1226(a) restates the current provisions in the predecessor statute," which allowed noncitizens who entered without inspection to be released on bond. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025) (citing H.R. Rep. No. 104-469, pt. 1, at 229; H.R. Rep. No. 104-828, at 210).

49.     Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.").

50.     Thus, in the decades that followed, most people who entered without inspection and were thereafter arrested and placed in standard removal proceedings were considered for release on bond and also received bond hearings before an Immigration Judge, unless their criminal history rendered them ineligible. *Diaz Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238, -- F. Supp. 3d --, at *4 (D.

Mass. July 24, 2025). That practice was consistent with many more decades of prior practice, in which noncitizens who had entered the United States, even if without inspection, were entitled to a custody hearing before an Immigration Judge or other hearing officer.  See 8 U.S.C. §§ 1252(a) (1994).

51.     In recent months, Defendants have abruptly changed course. On July 8, 2025, ICE Director Todd M. Lyons issued an internal memorandum stating that, "in coordination with the Department of Justice (DOJ)," DHS had "revisited" its legal position and believed that § 1225, not § 1226, governs the detention of noncitizens who are present in the United States without having been admitted. *Diaz Martinez*, 2025 WL 2084238, at *4. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[1] claims that all persons who entered the U.S. without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the U.S. for months, years, and even decades.

52.     On September 5, 2025, the BIA followed suit and issued a precedential decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The BIA held that noncitizens "who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." 29 I&N Dec. at 220.

53.     Since Defendants adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected *Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE.

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

54.     Even before ICE or the BIA introduced these nationwide policies, IJs in

the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the U.S. without inspection and who have since resided here. There, the United States District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the U.S. *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

55.   Subsequently, court after court has adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation. *See, e.g.*, *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); Diaz Martinez v. Hyde, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); Rosado v. Figueroa, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Zaragoza Mosqueda v. Noem, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*,

13

No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *see also, e.g.*, *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

56.    Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Plaintiff.

57.    As these decisions explain, the BIA's position in *Matter of Yajure Hurtado* defies the INA. The plain text of the statute shows that § 1226(a), not § 1225(b), applies to people like Petitioner.

58.    Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (describing 1226(a) as the "default rule" for people detained pending removal). These removal hearings are held under § 1229a, to "decide the inadmissibility or deportability of a [noncitizen]."

59.    The text of § 1226 explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Just this year, Congress enacted subparagraph (E) in the Laken Riley Act to exclude certain noncitizens who entered without inspection from § 1226(a)''s default bond provision. Subparagraph (E)'s reference to persons inadmissible under § 1182(6)(A), i.e., persons inadmissible for entering without inspection, makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates "specific exceptions" to a statute's applicability, it "proves" that absent those exceptions, the statute

generally applies. *Rodriguez Vazquez*, 2025 WL 1193850, at *12 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)).

60.     Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the U.S., including those who are present without admission or parole.

61.     Under the BIA's interpretation, all noncitizens subject to inadmissibility grounds are detained without the opportunity for a bond hearing under 8 U.S.C. § 1225(b). *Matter of Yajure Hurtado*, 29 I&N Dec. at 220; *see* 8 U.S.C. §1182(a)(6) (making people who are present without having been admitted inadmissible); 8 U.S.C. § 1101(a)(14) (defining an admission). Therefore, this interpretation would render all the grounds of mandatory detention in § 1226(c) applying to inadmissible noncitizens, including the recently-passed Laken Riley Act, superfluous. *Gomes*, 2025 WL 1869299, at *7; *Rodriguez*, 779 F. Supp. 3d at 1258; *see Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2103) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). This statutory structure demonstrates that Congress did not intend to make § 1226(a) inapplicable to all inadmissible noncitizens, but rather viewed it as the default bond provision for people arrested within the United States.

62.     By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who very recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A); *see also Diaz Martinez*, 2025 WL 2084238, at *8 ("Our immigration laws have long made a distinction between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958))). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a [noncitizen] seeking

to enter the country is admissible." *Jennings*, 583 U.S. at 287.

63. The BIA''s interpretation "would render the phrase 'seeking admission' in 8 U.S.C. § 1225(b)(2)(A) mere surplusage." *Lopez Benitez*, 2025 WL 2371588, at *6. That section applies to people who are (1) applicants for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted. 8 U.S.C. § 1225(b)(2)(A); *Lopez Benitez*, 2025 WL 2371588, at *6; *Diaz Martinez*, 2025 WL 2084238, at *2. The BIA's interpretation makes all applicants for admission subject to mandatory detention, leaving the "seeking admission" criterion unnecessary and violating the rule against surplusage. *Lopez Benitez*, 2025 WL 2371588, at *6; *Diaz Martinez*, 2025 WL 2084238, at *6. *See also Bethancourt Soto v. Soto*, No. 1:25-cv-16200 at 12 (D.N.J. Oct. 22, 2025).

64. Instead, the phrase "seeking admission" indicates that § 1225(b)(2)(A) applies to people who are taking "some sort of present-tense action," in other words, coming or attempting to come into the United States. *Diaz Martinez*, 2025 WL 2084238, at *6; *see also Matter of M-C-D-V-*, 28 I&N Dec. 18, 23 (BIA 2020) (stating that "the use of the present progressive tense . . . denotes an ongoing process"). Therefore, § 1226(a), not § 1225(b)(2)(A), governs the detention of people detained within the United States who are not actively seeking admission, as required by the statute.

65. Applying § 1226(a), rather than § 1225(b), to people detained in the interior who had previously entered without inspection is consistent with the government's longstanding practice, which "can inform a court's determination of what the law is." *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024). This longstanding practice further counsels against the BIA's abrupt change in policy. *Maldonado*, 2025 WL 2374411, at *11.

66. Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Plaintiff, who have already entered and were residing in the U.S. at the time they were apprehended.

16

67. The BIA's interpretation of § 1225(b)(2)(A) to mandate detention without a bond hearing for all noncitizens present in the United States without having been admitted presents serious constitutional concerns. Therefore, to the degree that the statute remains ambiguous, the Court should presume that Congress "did not intend the alternative which raises serious constitutional doubts" and reject that construction. *Clark v. Martinez*, 543 U.S. 371, 381-82 (2005). Therefore, § 1226(a), which permits bond hearings, not § 1225(b)(2)(A), which does not, governs the detention of people like Petitioner.

**II. The BIA's Application of Mandatory Detention to Noncitizens Like Plaintiff Violates Substantive and Procedural Due Process**

68. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id*. at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against unlawful or arbitrary personal restraint or detention."). This fundamental due process protection applies to all noncitizens within the United States, including both removable and inadmissible noncitizens. *See id*. at 693; *Plyler v. Doe*, 457 U.S. 202, 212 (1982); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896).

69. Absent adequate procedural protections, substantive due process requires a "special justification" that "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690; *accord, e.g.*, *Torralba v. Knight*, No. 2:25-cv-1366, 2025 WL 2581792, at *12 (D. Nev. Sept. 5, 2025) (describing the standard for a substantive due process violation); *Fernandez v. Lyons*, No. 8:25-cv-506, 2025 WL 2531539, at *4 (D. Neb. Sept. 3, 2025) (same). In the immigration context, the Supreme Court has recognized only two valid

purposes for civil detention—to mitigate the risks of danger to the community and to prevent flight. *Id.*; *Demore*, 538 U.S. at 528. Thus, to withstand constitutional scrutiny, the nature and duration of mandatory immigration detention must be reasonably related to these purposes.

70.     In *Demore*, the Supreme Court upheld the constitutionality of § 1226(c) against a facial challenge, specifically citing evidence that had been before Congress about noncitizens with criminal convictions. 538 U.S. at 518-520. This justification does not apply, however, to noncitizens with no criminal record whatsoever who have lived in the community for years. The broad policy set forth in *Matter of Yajure Hurtado* is not reasonably related to the purposes of prevent danger to the community or flight risk and violates substantive due process.

71.     Additionally, procedural due process protects noncitizens against deprivation of liberty without adequate procedural protections, including notice and the opportunity to be heard. *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367 (2025); *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). In determining the proper procedure to protect a detained noncitizen's procedural due process rights under the Fifth Amendment, courts apply the three-part balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), weighing (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Black v. Decker*, 103 F.4th 133, 147-48 (2d Cir. 2024); *Gayle v. Warden Monmouth C'ty Corr. Facility*, 12 F. 4th 321, 331 (3d Cir. 2021); *Hernandez-Lara*, 10 F.4th at 28; *Velasco Lopez*, 978 F.3d at 851 (all quoting *Mathews*, 424 U.S. at 335). Here, the BIA's interpretation of the statute to require detention of all people in the United States without having been admitted deprives them of their liberty

without any individualized process to determine whether such detention is necessary to prevent flight risk or danger to the community, and violates due process.

72. First, the "importance and fundamental nature" of an individual's liberty interest is well-established. *United States v. Salerno*, 481 U.S. 739, 750 (1987); *see also Ashley*, 288 F. Supp. at 670 ("Freedom from confinement is a liberty interest of the highest constitutional import."). For people "who can face years of detention before resolution of their immigration proceedings, 'the individual interest at stake is without doubt particularly important." *Linares Martinez v. Decker*, No. 18-cv-6527 (JMF), 2018 WL 5023946 at *3 (S.D.N.Y. Oct. 17, 2018).

73. Weighing this factor in *Velasco Lopez*, the Second Circuit found the private interest to be "on any calculus, substantial," observing that the petitioner, "could not maintain employment or see his family or friends or others outside normal visiting hours. The use of a cell phone was prohibited, and he had no access to the internet or email and limited access to the telephone." 978 F.3d at 851-52. Similarly, the First Circuit found a substantial private liberty interest for the petitioner in *Hernandez-Lara*, noting that the petitioner there was incarcerated "alongside criminal inmates" at a jail where "she was separated from her fiancé and unable to maintain her employment." 10 F.4th at 28.

74. Second, absent any individualized bond hearing, people will be detained despite not being a danger to the community or a flight risk, because there is no mechanism to determine whether their detention is necessary. *See, e.g.*, *Günaydin v. Trump*, No. 25-cv-1151, 2025 WL 1459154, -- F. Supp. 3d --, at *8 (D. Minn. May 21, 2025) (noting that lack of consideration of "individualized or particularized facts . . . increases the potential for erroneous deprivation of individuals'' private rights"); *Ashley*, 28 F. Supp. 2d at 670 (finding a procedural due process violation because "the Government has not proved that Petitioner presents an identified and articulable threat to an individual or the community so as to justify his continued detention"). A bond hearing would have significant value because it is designed to assess the

individualized facts of each case and determine whether less restrictive measures can fulfill the same goals.

75.     Finally, the burden on the government of returning to the longstanding practice of holding bond hearings for people like Plaintiff does not outweigh the liberty interest at stake. To the contrary, the government has an interest in "minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854; *see also Hernandez-Lara*, 10 F.4th at 33 (noting that "limiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention"). Additionally, "unnecessary detention imposes substantial societal costs. . . . The needless detention of those individuals thus separates families and removes from the community breadwinners, caregivers, parents, siblings and employees. Those ruptures in the fabric of communal life impact society in intangible ways that are difficult to calculate in dollars and cents." *Hernandez-Lara*, 10 F.4th at 33 (citation and internal quotation marks omitted). The cost to the government and society of detaining people unnecessarily for long periods of time is greater than the cost of providing individualized hearings, and weighs in favor of additional procedural protections.

76.     At these bond hearings, due process requires that the Government bear the burden of proof by clear and convincing evidence. *See Gayle*, 12 F.4th at 332 ("When such a severe deprivation is at issue, the Government must bear the burden of proof."). "A standard of proof serves to allocate the risk of error between the litigants and reflects the relative importance attached to the ultimate decision." *German Santos v. Warden Pike C'ty Corr. Facility*, 965 F.3d 203, 213 (citing *Addington v. Texas*, 441 U.S. 418, 423 (1979)). Therefore, when the Third Circuit has ordered a constitutionally-required bond hearing, it has placed the burden on the government by clear and convincing evidence. *German Santos*, 965 F.3d at 214; *Guerrero-Sanchez v. Warden York City Prison*, 905 F.3d 208, 224 & n.12 (3d Cir.

2018), *abrogated on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 572 (2022). Other circuit courts have similarly held that due process requires this allocation of the burden in bond hearings for noncitizens like petitioner, who were then detained under § 1226(a). *Hernandez-Lara*, 10 F.4th at 39-40; *Velasco Lopez*, 978 F.3d at 855-56. Thus, even if the statute requires detention without a bond hearing, due process requires a hearing at which the government bears the burden by clear and convincing evidence.

**FIRST CLAIM FOR RELIEF**
**Violation of 8 U.S.C. § 1226(a)**
**Unlawful Denial of Release on Bond**

77.     Plaintiff re-alleges and incorporates by reference the above paragraphs.

78.     The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to grounds of inadmissibility. Specifically, it does not apply to Plaintiff, who has been living in the United States since April 12, 2022, prior to being apprehended and placed into removal proceedings by Defendants on June 3, 2026.

79.     The fact that Plaintiff was previously detained and released at the border does not undermine this conclusion. First, Keneth was released on his own recognizance at the border pursuant to 8 U.S.C. § 1226, not paroled pursuant to 8 U.S.C. § 212(d)(5). See Matter of Cabrera-Fernandez, 28 I&N Dec. 747, 749 (BIA 2023) (describing this distinction). Therefore, he was never treated as an "arriving alien" or subject to the "entry fiction" that comes with parole, "whereby noncitizens are physically permitted to enter the country but are nonetheless treated for legal purposes as if stopped at the border." Diaz Martinez, 2025 WL 2084238, at *3 (quoting Dep't of Homeland Sec. v. Thuraissigam, 591 U.S. 103, 139 (2020)). Therefore, the procedural history of Plaintiff's case shows that it is distinguishable from Matter of Q. Li and falls squarely within the scope of 8 U.S.C. § 1226(a). Diaz Martinez, 2025 WL 2084238, at *4; Gomes, 2025 WL 1869299, at *8; accord Rosado, 2025 WL 2337099, at *6.

80.   In any event, that initial arrest "is not what is at issue in this case," rather it is his 2026 arrest and detention. See Lopez Benitez, 2025 WL 2371588. Even if Keneth was "seeking admission" within the meaning of § 1252(b)(2)(A) at the time of his entry and initial apprehension, he was no longer engaged in that "present-tense action" when he was arrested in Newark, New Jersey on June 3, 2026, and therefore no longer meets the requirements of § 1252(b)(2)(A) discussed above. See Diaz Martinez, 2025 WL 2084238, at *6.

81.   Plaintiff is detained under § 1226(a) and is eligible for release on bond. Defendants' unlawful application of § 1225(b) to Plaintiff violates the INA.

**SECOND CLAIM FOR RELIEF**
**Violation of Bond Regulations, 8 C.F.R. §§ 236.1, 1236.1, and 1003.19**
**Unlawful Denial of Release on Bond**

82.   Plaintiff re-alleges and incorporates by reference the above paragraphs.

83.   In 1997, after Congress amended the INA through IIRIRA, EOIR and the then Immigration and Naturalization Service, issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before Immigration Judges under 8 U.S.C. § 1226 and its implementing regulations.

84.   The regulation at 8 C.F.R. § 1003.19 lays out bond procedures, and § 1003.19(h)(2) delineates categories of noncitizens who are subject to mandatory detention and not entitled to a bond hearing. The fact that noncitizens within the United States who are subject to inadmissibility grounds are not included on this list shows that the agencies did not intend them to be subject to mandatory detention.

85.   Nonetheless, pursuant to *Matter of Yajure Hurtado*, EOIR has a policy

and practice of applying § 1225(b)(2) to individuals like Plaintiff.

86. The application of § 1225(b)(2) to Plaintiff unlawfully mandates his continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. The BIA's interpretation thus violates the regulations and unlawfully denies Plaintiff a bond hearing.

## THIRD CLAIM FOR RELIEF
### Violation of the Administrative Procedure Act
### Contrary to Law and Arbitrary and Capricious Agency Policy

87. Plaintiff re-alleges and incorporates by reference the above paragraphs.

88. The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

89. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to grounds of inadmissibility. Specifically, it does not apply to Plaintiff, who has been living in the United States since April 12, 2022 prior to being apprehended and placed into removal proceedings by Defendants. Plaintiff is detained under § 1226(a) and is eligible for release on bond.

90. In taking a contrary position, the BIA has reversed decades of prior practice, and "would expand § 1225(b) face beyond how it has been enforced historically, potentially subjecting millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have extremely limited (if any) application." *Lopez Benitez*, 2025 2371588, at *8. Respondents have failed to articulate reasoned explanations for their decisions, which represent changes in the agencies' policies and positions; have considered factors that Congress did not intend to be considered; have entirely failed to consider important aspects of the problem; and have offered explanations for their decisions that run counter to the evidence before the agencies.

91.　The application of § 1225(b)(2) to Plaintiff is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA. See 5 U.S.C. § 706(2).

**FOURTH CLAIM FOR RELIEF**
**Violation of the Fifth Amendment Due Process Clause**
**Substantive Due Process**

92.　Plaintiff re-alleges and incorporates by reference the above paragraphs.

93.　The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V. Substantive due process requires that immigration detention without a bond hearing be reasonably related to the goals of ensuring the appearance of noncitizens at future proceedings and preventing danger to the community. *Zadvydas*, 533 U.S. at 690.

94.　The BIA's application of mandatory detention under § 1225(b)(2) is not reasonably related to those goals and thus violates substantive due process.  Since his entry in April 12, 2022, Plaintiff has been living peacefully in New Jersey. Plaintiff has an approved immigrant visa as Special Immigrant Juvenile, has also applied for Asylum based on political, racial, ethnic, and social group persecution, and for withholding of removal under the Convention against Torture. Petitioner is not a flight risk as he has lived in New Jersey for the past few years and has the direction of legal counsel, as well as an approved petition giving him legal status and deferred action in the US. He has employment and community ties, his school, his family and sponsor family. Finally, Plaintiff **has no criminal history**, in the United States or anywhere else in the world. *See id.* He has never been involved in violence, terrorism, or any disqualifying activities under INA § 236. *Id.*

95.　Plaintiff has a fundamental interest in liberty and being free from official restraint.

96.　The government's detention of Plaintiff without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process.

**FIFTH CLAIM FOR RELIEF**
**Violation of the Fifth Amendment Due Process Clause**
**Procedural Due Process**

97.    Plaintiff re-alleges and incorporates by reference the above paragraphs.

98.    The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V. Courts apply the *Mathews v. Eldridge* balancing test to determine what procedures the due process clause requires. *Gayle*, 12 F.4th at 331.

99.    The first factor is the private interest that will be affected by the official action. *Id.* Here, the deprivation of Plaintiff's liberty is a particularly weighty interest. Plaintiff is being held despite being bond-eligible and having no criminal history. Petitioner is being detained without access to a custody redetermination before a neutral decisionmaker.

100.    The second factor is the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional safeguards. *Id.* Here, there is a great risk of unnecessary detention because the BIA''s interpretation of the statute does not permit any individualized determination of whether detention during removal proceedings is necessary. *See Ashley*, 288 F. Supp. 2d at 670. At a hearing before a neutral decisionmaker, Plaintiff could show that his detention is not necessary because he is neither a danger to society nor a flight risk. Petitioner has never been arrested and thus poses no danger to society.

101.    All of this supports a grant of reasonable bond. A hearing at which the government bears the burden of proof by clear and convincing evidence would protect the substantial liberty interest at stake. *German Santos*, 965 F.3d at 213-14.

102.    The final factor is the Government's interest. *Gayle*, 12 F.4th at 331. The government has no legitimate interest in detaining Plaintiff when detention is not necessary to ensure appearance at future hearings or protect the community, and less restrictive measures like a reasonable bond would serve those purposes. *Hernandez-Lara*, 10 F.4th at 32-33; *see Ousman D. v. Decker*, No. 20-9646, 2020 WL 5587441,

at *4 (holding that due process requires consideration of less restrictive alternatives to detention that would address the government's legitimate purpose); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 241-42 (W.D.N.Y. 2019) (same).  The bond hearing requested was initiated by the Plaintiff and is separate and apart from removal proceedings. Therefore, the government does not have an interest in detaining Plaintiff without a bond hearing that outweighs his substantial liberty interest in such an individualized determination.

103.   Defendants' detention of Plaintiff without any hearing to determine whether that detention is necessary violates procedural due process.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1.   Assume jurisdiction over this matter;

2.   Issue a Writ of Habeas Corpus requiring Defendants' to immediately release Plaintiff from custody;

3.   Order that Plaintiff shall not be transferred outside Western District of Louisiana while this habeas petition is pending;

4.   Issue an Order to Show Cause ordering Defendants' to show cause why this Petition should not be granted within three (3) days;

5.   In the alternative, provide Plaintiff with a bond hearing pursuant to  8 U.S.C. § 1226(a) within seven (7) days; at which the government must establish by clear and convincing evidence that Plaintiff presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Plaintiff's release would present;

6.   Declare that Plaintiff's continued detention is unlawful in violation of the Immigration and Nationality Act, the Administrative Procedure Act, 5 U.S.C. § 706(2)(A); and/or the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

and

7.     Grant such further relief as the Court deems just and proper.


Dated: July 29, 2026                    Respectfully submitted,
                                        */s/Teresa Reyes-Flores*
                                        Teresa Reyes Flores
                                        Louisiana Bar No. 41107
                                        Immigration Services and Legal Advocacy
                                        3801 Canal St., STE 400
                                        New Orleans, LA 70119
                                        Phone: (504) 265-0416
                                        Email: treyesflores@islaimmigration.org

27

**VERIFICATION BY SOMEONE ACTING ON PLAINTIFF'S BEHALF PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Plaintiff because I am one of Plaintiff's attorneys, and I have discussed the claims with Plaintiff's legal team. Based on those discussions, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: July 29, 2026

Respectfully submitted,
*/s/Teresa Reyes-Flores*
Teresa Reyes Flores
Louisiana Bar No. 41107
Immigration Services and Legal Advocacy
3801 Canal St., STE 400
New Orleans, LA 70119
Phone: (504) 265-0416
Email: treyesflores@islaimmigration.org

28